IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**CENTRIA**                                                                                                    **PLAINTIFF**

vs.                                                       CIVIL ACTION NO: 4:11-cv-00079-CWR-LRA

**ALPLY ARCHITECTURAL BUILDING
SYSTEMS, LLC**                                                                                               **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are CENTRIA's *Motion for Default Judgment* [Docket No. 6], Alply Architectural Building Systems, LLC's ("Alply") *Motion to Vacate or Set Aside Entry of Default* [Docket No. 7] and CENTRIA's *Response in Opposition to Motion to Vacate or Set-Aside Entry of Default* [Docket No. 8] and its memorandum in support thereof.  After consideration of the parties' briefs and the relevant law, the Court finds that CENTRIA's *Motion for Default Judgment* is well-taken.

**I.  BACKGROUND**

CENTRIA, a general partnership created under the laws of the state of Pennsylvania with its principal place of business in Pennsylvania, is a manufacturer of various building products and services which include coil coating services and products.  Complaint [Docket No. 1], at ¶¶ 2, 5.  Alpy, a limited liability company with its principal place of business in the state of Illinois, manufactures architectural panel systems at a manufacturing facility located in Dekalb, Mississippi.  *Id.,* at ¶¶ 1, 5.  In 2010, the parties entered into an agreement whereby Alply, after receiving quotes from CENTRIA,  submitted purchase orders to CENTRIA for some of these products to be delivered to Alply at its manufacturing facility.  *Id., at* ¶ 6.  Pursuant to the "TERMS AND CONDITIONS OF SALE" found in the agreement, a "Buyer shall pay within thirty (30) days after invoice date one

hundred percent (100%) of the value of material shipped." *Id.,* at ¶ 7. The agreement also provides that if Alply failed to pay within that time period, Alply would pay interest on the past due amounts at the lesser of the highest amount allowed by law or one and one half percent. *Id*. CENTRIA met its obligations by delivering the products to Alply. *Id*. at ¶ 8. According to CENTRIA, however, Alply, has failed to remit payment for same. *Id*.

Because of Alply's failure to pay for the goods and services, on May 9, 2011, CENTRIA initiated this action in this Court.[1] CENTRIA claims, at a minimum, it is owed "damages in an amount no less than $141,844.85, plus interest as of January 2010 in the amount of $2,136.63, and interest at the rate of 1-1/2 % per month (or, if less, the highest rate allowed by law) that has accrued since January 2010 on each outstanding invoice until paid, along with all associated costs, including reasonable attorney's fees, and all other relief deemed appropriate." *Id*. at ¶ 41. As its legal basis for such, it levies charges against Alply for breach of contract, breach of implied covenant of good faith, and unjust enrichment. *Id*. at ¶¶ 29 - 40.

More pertinent to the instant matter, however, is the fact that CENTRIA contends that Alply neither responded to the duly filed and served Complaint nor requested an extension of time in which to respond to CENTRIA's lawsuit. CENTRIA filed its *Motion for Entry of Default Judgment* [Docket No. 4], the Clerk granted the same the following day on June 1, 2011 [Docket No. 5], and days later on June 7, 2011, CENTRIA filed its *Motion for Default Judgment* [Docket No. 6]. In moving for the default judgment, CENTRIA noted that Alply was "duly served with the Summons and the Complaint on May 9, 2011 through service upon its registered agent for service of process,

---

[1] Title 28, Untied States Code, Section 1332(a) provides: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."

2

CT Corporation System, in accordance with Federal Rule of Civil Procedure 4(h)" *see*, *id*., at ¶ 1, yet wholly failed to respond within twenty-one (21) days of being served under Rule 55(b). *Id*. at ¶¶ 3-4. As a result, says CENTRIA, it is entitled to a default judgment in line with the amount sought in its Complaint ( $141,844.85, plus interest as of January 2010 in the amount of $2,136.63, costs, and attorney's fees). This filing received Alply's attention as Alply finally took action by filing a Motion to Set Aside Default. [Docket No. 7].

## II. ANALYSIS

Under Rule 55 of the Federal Rules of Civil Procedure, "a court *may* set aside an entry of default for good cause. . . ." *Watkins Ludlam Winter & Stennis, P.A. v. DynasteelCorp*., 2011 WL 976592*2 (S.D. Miss. March 17, 2011)(emphases added). *See also Herrington v. Buford*, Civ. Action No. 3:10cv00661CWR-LRA, slip op. at 6 (S.D. Miss. Sept. 23, 2011). The good cause factors enunciated by the Fifth Circuit are: whether the default was willful; whether setting it aside would prejudice the adversary; and whether a meritorious defense is presented. *Lacy v. Sitel Corp*., 227 F.3d 290, 292 (5th Cir. 2000). These factors, however, are not exhaustive, talismanic, nor must the Court consider all of them.[2] *Herrington,* slip op. at 6, citing In re: Dierschke, 975 F.2d 181, 184 (5th Cir. 1992). "The ultimate inquiry remains whether the defendant shows 'good cause' to set aside the default." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992).

"A willful default is an 'intentional failure' to respond to litigation." *Economy Stone Midstream Fuel, LLC v. M/V A.M. Thompson*, 2009 WL 4728695, at *2 (N.D. Miss. Dec. 3, 2009). When a party has actual notice of a claim for which a response has been demanded and

---

[2]The same factors are considered when the court is either requested to set aside the clerk's entry of default or when requested to set aside a default judgment. *CJC Holdings*, 979 F.2d at 64.

fails to answer the claim, the failure may be deemed willful.  *CJC Holdings*, 979 F.2d at 64; *Anderson v. Iceland Seafood Corp.*, 77 F.3d 480, 1996 WL 46554, *3 (5th Cir. Jan. 18, 1996).  Importantly, where there is a willful or intentional failure to respond, the inquiry ends, and the Court need not make any further findings in refusing a party's request to set aside a default.  See *Block Corp. v. Nunez*, 2009 WL 198366, *3 (N.D. Miss. 2009), *citing Dierschke*, 975 F.2d at 184.  See also *Iceland Seafood Corp.*, 1996 WL 46554, at *3.

In the case at bar, there is no question that Alply failed to respond to the lawsuit filed against it and that this failure was willful.

For its part, and belatedly, on June 14, 2011, Alply filed its first response to this action in general and this issue in particular by way of its *Motion to Vacate or Set Aside Entry of Default* [Docket No. 7] pursuant to Rule 55(c) and 60(b).  In it, Alply requests that the Court "set aside the entry of default against it by the Clerk on June 2, 2011 and, if necessary, [a] default judgment that may be pending at the time the Motion is heard." [Docket No. 7 at 1].  As its basis, Alply argues that its failure to file a responsive pleading to the Complaint was the result of excusable neglect as opposed to willful conduct.  *Id*., at 2.  Specifically, Alply asserts the following: 1) on April 15, 2011, a tornado struck Kemper County, which damaged Alply's building; and  2) on May 16, 2011 Mr. Peters, who is the Manager and a Member of Alply, injured his hand which required surgery and because of this "he was unable to travel from his Florida home to Mississippi as often as he normally would."[3]  *Id.*  Although it offered these reasons, Alply inexplicably fails to mention how or why these events affected its ability to timely respond.

Alply also offers  two other grounds as a basis for setting aside the entry of default.  First,

---

[3]Peters, however, was released from the hospital just two days later on May 18, 2011. [Docket No. 7 at 2].

it contends that the delay in responding to the lawsuit was minimal "as only 12 days have passed since the Clerk's entry of default"and that such delay will not result in prejudice or the loss of evidence. [Docket No. 7], at ¶ 8.  Secondly, Alply contends that it has a colorable defense to the merits of the complaint as well as the potential for a counterclaim. [Docket No. 7], at ¶ 9.  For proof on this point, Alply alleges that "the material that [CENTRIA] provided to Alply was defective and not up to specifications for the purpose intended which resulted in Alply incurring more costs and delay." *Id*.

On June 27, 2011, CENTRIA timely responded to Alply's Motion to Set Aside Default. *See*, *CENTRIA's Response in Opposition to Motion to Vacate or Set Aside Entry of Default* [Docket No.8].  In essence, CENTRIA amplifies the basis for which this Court may set aside the default entry or deny the entry of a default judgment.  In doing so, CENTRIA provides legal authority in support of its position combined with the following relevant facts: Alply was well aware that CENTRIA intended to file suit to collect on Alply's outstanding debt because it sent three demand letters (certified) within two months *prior* to filing suit. [Docket No. 8-1, 8-2, 8-3] and [Docket No. 9] at 2.[4]  CENTRIA filed the lawsuit only after Alply chose to ignore these letters.

Once the Complaint was filed, a summons was issued to Alply and served upon its registered agent.  The summons was clear informing Alply that: "A lawsuit has been filed against you.  Within 21 days after service of this summons on you . . . you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12," . . . and that "[i]f you

---

[4] In these letters, CENTRIA literally pleaded with Aply to honor its obligations.  In fact, CENTRIA advised Aply that it wanted to resolve the matter without resorting to litigation, but it would take the necessary steps to obtain payment even if it had to initiate litigation.  See [Docket No. 8-2].

fail to respond, *judgment by default will be entered against you for the relief demanded in the complaint.*" See Summons [Docket No. 3](emphasis added).[5] Moreover, CENTRIA's counsel took an additional step and spoke by phone with Peters on May 12, 2011 and explained that the Complaint had been filed. She then emailed a copy of the executed Summons reflecting service on Alply's agent on May 9, 2011. Affidavit of Debra Brown [Docket No. 8-5]. In addition, Brown discussed with Peters the claims asserted by CENTRIA and the due date for Alply's response. There is no doubt that by May 12, 2011, Alply through Peters and its registered agent knew that a response was due by May, 31, 2011, the twenty-first day after its service on Alply. [Docket No 9 at 4]. Notwithstanding this notice, Alply did nothing.

As a courtesy, on or about June 2, 2011, after the Clerk's Entry of Default, CENTRIA's counsel again spoke with Peters and advised him of the same and indicated that CENTRIA would be moving for a default judgment. [Docket No. 8-5]. "At no point during [Brown's] conversations with Peters . . . did Peters mention anything about a tornado damaging Alply's building or an injury to this hand that required out-of-state surgery, or anything else that would prevent Alply from timely responding to CENTRIA's Complaint." *Id*. at ¶ 8. It was not until June 14, 2011 that Alply responded to the instant Complaint by filing its motion to set aside entry of default. [Docket No. 7].

Here, Alply admits that it was served with the Summons and Complaint on May 9, 2011

---

[5]CENTRIA avers that after the Complaint was filed and a copy of the Complaint and the Summons served upon Alply on May 9, 2011, Peters left a phone message for Brown advising her that he "was in the process of preparing a response to the April 25 demand letter." [Docket No. 8-5], at ¶ 4. Counsel for CENTRIA returned Peter's call twice, but on each occasion she was advised that Peters was unavailable. *Id*. CENTRIA filed the executed Proof of Service of the Summons on May 11, 2011. Finally, on May 12, CENTRIA'S counsel spoke at length about the Complaint's filing and the due date for Alply's response, and upon Peters' representation that did not have a copy of the Complaint, CENTRIA'S counsel emailed a copy of the Complaint and the proof of service reflecting service on Alply's agent. Id., at ¶ 5.

6

and that it failed to file a responsive pleading prior to the Clerk's Entry of Default. Affidavit of John Peters [Docket No. 7-1], at ¶ 7. In a half-hearted attempt to remove the sting of this admission, however, Alply contends that the factual circumstances previously mentioned support a finding of excusable neglect. The Court, however, is unconvinced.

      As CENTRIA correctly points out, the events surrounding the tornado occurred nearly a month and a half BEFORE Alply's response was due and three weeks before CENTRIA even filed its complaint. [Docket No. 9] at 10. Likewise, Peter's hand injury does not score any points in his attempt to establish good cause. According to Alply, Peters underwent surgery and was released from the hospital two days later. *Id.* Based on the uncontested facts, after his release, he still had nearly two weeks in which to respond to the Complaint. Therefore, it is clear, there were alternatives available to Alply - -doing nothing, however, was not an option. Unfortunately for Alply, ratifying its decision to simply respond at its convenience by phone with the defendant is not an option for this Court either. See *Watkins Ludlam Winter & Stennis, P.A. v. Dynasteel Corp.*, 2011 WL 976592, at * 4 (S.D. Miss. Mar. 17, 2011)("The Federal Rules of Civil Procedure exist to promote order and predictability in litigation, and they-like this Court-do not wait for the moment at which a party at last is good and ready"). Alply could have designated someone else to manage the matter so that a response was timely filed or it could have requested an extension of time in which to respond. Alply acted at its peril by ignoring pre-suit letters, the courtesy copy of the complaint forwarded to it and the process duly served upon it. Because Alply chose to do nothing other than going about its daily business "in either open defiance or willful ignorance of the deadline hanging over its head," *see, Dynasteel*, 2011 WL 976592, at *4, the Court finds that the proffered excuses offered by Alply are simply not enough to justify

setting aside the entry of default.[6]  See *Iceland Seafood Corp.*, 1996 WL 46554, at *3 (affirming trial court's refusal to set aside entry of default where court found that party had actual notice of counterclaim but willfully refused to reply despite fact that response was demanded on at least three occasions); and *CJC Holdings*, 979 F.2d at 63, 64 (company's two-week shut down nor defendant's president's out of town business trips toll time within which response due or excuse company's failure to respond).

There is no basis to set aside the Entry of Default and the court finds that entry of a default judgment under Federal Rule 55(b) is appropriate.  Because Alply did not answer the claims brought against it, the well-plead allegations are taken as admitted. *Hennis v.Trustmark Bank*, 2010 WL 3122644, *3 (S.D. Miss. Aug. 4, 2010).  Accordingly, default judgment is entered in favor of CENTRIA in the amount of $141,844.85, plus interest as of January 2010 in the amount of $2,136.63 and all interest that has accrued since January 2010 at the rate of 1 ½% per month on each invoice until paid, along with all associate costs, including reasonable attorney's fees.

### III. CONCLUSION

For the foregoing reasons, CENTRIA's *Motion for Default Judgment* [Docket No. 6], is **GRANTED** and Alply's Motion to Set Aside Default [Docket No. 7] is DENIED.

SO ORDERED AND ADJUDGED, this the 10th day of January, 2012.

---

[6]The Court recognizes and concurs with CENTRIA'S additional argument that Alply has not presented a meritorious defense.  Although Alply argues that the materials delivered were defective, it does not show how according to the terms of the contract, it would be able to mitigate or avoid the damages claimed by CENTRIA. See *Dynasteel Corp*., 2011 WL 976592, at * 2("claiming the existence of a meritorious defense is a far cry from actually offering one"); see also *Economy Stone*, 2009 WL 4728695, at *3 n.3 (N.D. Miss. Dec. 3, 2009)(noting the absence of meritorious defense offered because, even  if true, it contradicted the terms of the personal guaranty agreement); and *Herrington*, *supra*, at 12, n.8 (general denials and conclusory statements regarding meritorious defenses not enough to justify setting aside a duly entered default judgment.)

                                    s/Carlton W. Reeves  
                                    UNITED STATES DISTRICT JUDGE